UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

APPLICATION OF CBRE GLOBAL           :
INVESTORS (NL) B.V., CBRE DRET       :
CUSTODIAN I B.V., CBRE DHC MAASTRICHT :          No. 1:20-MC-00315 (VEC)
(GROTE STAAT V) B.V. and CBRE DHC DEN :
HAAG (GROTE MARKSTRAAT V) B.V.       :          Oral Argument Requested
                                     :
                  Petitioners,       :
                                     :
For an Order Granting Leave to Issue Subpoenas for:
Discovery in Aid of Foreign Proceedings Pursuant :
to 28 U.S.C. § 1782.                 :

———————————————————————— x

## MEMORANDUM OF LAW IN OPPOSITION TO HBC US HOLDINGS LLC AND DAVID SCHWARTZ'S MOTION TO QUASH AND VACATE THE COURT'S ORDER PURSUANT TO 28 U.S.C. SECTION 1782 ALLOWING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

## **Table of Contents**

**Page**

Table of Authorities ...................................................................................................... ii

Preliminary Statement ..................................................................................................1

Statement of Facts .......................................................................................................4

     A.     The Guarantee Litigation – and Subsequent Developments ....................................4

     B.     Relevant Procedural History .................................................................................6

Argument .....................................................................................................................6

     A.     CBRE Satisfies Section 1782's Statutory Prerequisites .........................................6

          1.     Mr. Schwartz Is Found in this District. ...........................................................6

          2.     The Discovery Sought by CBRE Is "For Use" In Foreign Proceedings. ...........................................................................................8

     B.     The Discretionary Factors Weigh In Favor of Granting CBRE's Application .............................................................................................................12

          1.     HBC US and Mr. Schwartz Are Non Participants in the Dutch Proceedings. ..........................................................................................12

          2.     Dutch (and Canadian) Courts Are Receptive to Information Obtained Here ..........................................................................................14

          3.     CBRE Is Not Attempting to Circumvent Restrictions on Foreign Proof Gathering ....................................................................................14

          4.     The Discovery CBRE Seeks Is Narrowly Tailored ...................................16

     C.     Movants' Remaining Arguments Are Meritless ...................................................20

          1.     HBC US has Possession, Custody, Control and the Practical Ability to Obtain the Requested Documents. ............................................20

          2.     Service was Proper ...................................................................................25

**Table of Authorities**

**Page(s)**

*In re ALB-GOLD Teigwaren GmbH,*
   2019 WL 4140852 (E.D.N.Y. Aug. 30, 2019), *subsequent application for
   discovery granted*, 2020 WL 122943 (E.D.N.Y. Jan. 10, 2020) ...............................................7

*Alden Personnel Inc. v. David,*
   38 A.D.3d 697 (2d Dep't 2007) ....................................................................................8

*In re Ex Parte Application of Porsche Automobil Holding SE,*
   2016 WL 702327 (S.D.N.Y. Feb. 18, 2016)................................................................12

*In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. and Logistic
   Solution Int'l to Take Discovery of Chadbourne & Parke LLP,*
   60 F. Supp. 3d 419 (S.D.N.Y. 2014).....................................................................18, 19

*In re Aso,*
   2019 WL 2345443 (S.D.N.Y. June 3, 2019) ..............................................................12

*In re Atvos Agroindustrial Investimentos S.A.,*
   2020 WL 4937084 (S.D.N.Y. Aug. 24, 2020).................................................13, 14, 15

*In re Bloomfield Inv. Res. Corp.,*
   2018 WL 6418421 (E.D.N.Y. Dec. 6, 2018) ................................................................1

*C.A. Inc. v. AppDynamics, Inc.,*
   2014 WL 12860591 (E.D.N.Y. Sept. 8, 2019) ...........................................................24

*In re Certain Funds, Accounts, and/or Investment Vehicles Managed by Affiliates
   of Fortress Investment Group LLC,*
   2014 WL 3404955 (S.D.N.Y. July 9, 2014), *aff'd sub nom. Certain Funds,
   Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir.
   2015) .......................................................................................................................10

*Chevron Corp. v. Salazar,*
   275 F.R.D. 437 (S.D.N.Y. 2011) ..........................................................................20, 23

*In re del Valle Ruiz,*
   939 F.3d 520 (2d Cir. 2019)..............................................................................1, 7, 8

*In re Edelman,*
   295 F.3d 171 (2d Cir. 2002)......................................................................................8

*Gross v. Lunduski,*
   304 F.R.D. 136 (W.D.N.Y. 2014)........................................................................22, 23

## Table of Authorities

**Page**

*In re Honeywell Int'l, Inc. Sec. Litig.*,
  230 F.R.D. 293 (S.D.N.Y. 2003) .................................................................................18

*Intel Corp. v. Advanced Micro Devices*,
  542 U.S. 241 (2004)..............................................................................2, 6, 10, 13, 15, 16

*Jordan v. Forfeiture Support Assocs.*,
  928 F. Supp. 2d 588 (E.D.N.Y. 2013) ........................................................................25

*Kiobel v. Cravath Swaine & Moore LLP*,
  895 F.3d 238 (2d Cir. 2018)........................................................................................12

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015).................................................................................15, 18

*Raimey v. Wright Nat'l Flood Ins. Co.*,
  76 F. Supp. 3d 452 (E.D.N.Y. 2014) ..........................................................................22

*In re Republic of Ecuador*,
  2011 WL 4089189 (E.D. Cal. Sept. 13, 2011)..............................................................7

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*,
  2016 WL5408171 (S.D.N.Y. Sept. 27, 2016)........................................................22, 24

*In re RSM Production Corporation*,
  2018 WL 1229705 (S.D.N.Y. Mar. 9, 2018) ..............................................................16

*In re Sargeant*,
  278 F. Supp. 3d 814 (S.D.N.Y. 2017)..........................................................................10

*Schmitz v. Bernstein Liebhard & Lefshitsz, LLP*,
  376 F.3d 79 (2d Cir. 2004)..........................................................................................12

*In re Stati*,
  2018 WL 474999 (D. Mass. Jan. 18, 2018) ..................................................................7

*In re Sveaas*,
  249 F.R.D. 96 (S.D.N.Y. 2008) ...................................................................................18

*In re Ex Parte Tiberius Grp. AG*,
  2020 WL 1140784 (S.D.N.Y. Mar. 6, 2020) ..............................................................15

*In re Top Matrix Holdings Ltd.*,
  2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ................................................................12

## Table of Authorities

**Page**

**Statutes & Rules**

28 U.S.C. § 1782 ........................................................................................................ *passim*

Dutch Civil Code Art. 6:258 ......................................................................................... 5, 9

Fed. R. Civ. P. 4(e) .......................................................................................................... 8

Fed. R. Civ. P. 4(h)(1)(B) .............................................................................................. 25

Fed. R. Civ. P. 30(b)(6) ................................................................................................. 19

Fed. R. Civ. P. 45 ........................................................................................................... 20

N.Y. C.P.L.R. 302 ............................................................................................................ 8

**Preliminary Statement**

Petitioners CBRE Global Investors (NL) B.V., and its affiliates respectfully submit this memorandum in opposition to the motion of HBC US Holdings LLC and its General Counsel David Schwartz, to (i) quash subpoenas issued in aid of foreign litigation pursuant to 28 U.S.C. Section 1782, and (ii) vacate the Court's September 11, 2020 Order granting CBRE's Section 1782 application.

When Movants sought to delay this proceeding by proposing an extended briefing schedule on this motion, they represented to the Court that CBRE's Section 1782 application raised "complex, nuanced issues." ECF No. 11.  Now, however, Movants contend that CBRE's application "is pure gamesmanship" and "a flagrant attempt to sidestep the guidance of the Supreme Court" concerning Section 1782. Movants' Br. 1. In fact, nothing could be further from the truth. CBRE's application falls squarely within the ambit of Section 1782, which courts have "interpreted broadly," *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019), and "liberal[ly] in permitting requested discovery." *In re Bloomfield Inv. Res. Corp.*, 2018 WL 6418421, at *5 (E.D.N.Y. Dec. 6, 2018).

By this motion, Movants have thrown the proverbial kitchen sink at CBRE. As shown below, however, none of Movants' arguments provides any basis to vacate the Subpoenas authorized by this Court.

*First*, CBRE has met all statutory requirements under Section 1782. On this score, Movants principally contend that the documents requested are not "for use" in foreign proceedings. For at least two reasons, this requirement has been met under the "*de minimis*" standard that Movants concede governs here. Movants' Br. 22. To begin with, the documents are necessary to rebut defenses that HBC has raised in the pending Netherlands litigation. Since CBRE filed its Section 1782 application, HBC has filed its answering statement in the

Netherlands. As CBRE had anticipated, HBC raises its purported inability to pay and changed economic circumstances as basis to avoid liability under the parties' guarantees. To rebut that defense, CBRE plans to show through the documents subpoenaed here that HBC's defense is meritless, as any financial predicament now facing HBC is at least partially of its own making on account of the Restructuring described in CBRE's Section 1782 application. In addition, CBRE reasonably contemplates proceedings in the Netherlands and/or Canada to address other claims arising from the Restructuring, all of which are in the nature of fraudulent transfer and/or breach of fiduciary duty-type claims. CBRE has engaged counsel to prosecute these claims and has also communicated with HBC about the claims. Neither of the declarations submitted by Movants' foreign lawyers avers that those claims are not viable.

CBRE also contends that David Schwartz, who has been subpoenaed for deposition, neither resides nor is found in the district. Mr. Schwartz is an attorney admitted to practice in New York. He works at 225 Liberty Street, where HBC US and other HBC Group entities share offices. And he is listed on various HBC Group corporate filings and in the New York State bar records as having his office in New York City. Under settled precedent, he is found in this district.

*Second*, the four discretionary "*Intel*" factors that courts consider in connection with Section 1782 applications all weigh in CBRE's favor.

- Neither Movant is a litigant in any foreign tribunal, and courts routinely order foreign litigants' affiliates like HBC US to produce documents pursuant to Section 1782.

- Movants do not dispute that courts in the Netherlands and Canada are receptive to information obtained in Section 1782 discovery in the United States.

- CBRE's Section 1782 application does not circumvent foreign proof gathering restrictions. Movants have not established any foreign prohibition on using the information sought. CBRE's Canadian and Dutch counsel have averred that the material obtained in this proceeding may be used as evidence in their jurisdictions, and Movants' foreign counsel do not claim otherwise.

- CBRE's document requests are not burdensome but rather narrow and targeted. The categories of information that CBRE seeks and the relevant time period are limited. Nor do CBRE's Subpoenas require collection and production of emails or similar communications that are typically the most burdensome documents to review and produce and the most likely to contain privileged information.

Finally, Movants maintain that HBC US does not have possession, custody or control of responsive documents. This conclusory assertion is not supported by any facts, and certainly not by the bare-bones declaration of Suzanne Lee, their in-house lawyer, and is otherwise meritless. The limited documents in the public domain that CBRE has collected reveal that HBC US *does* have possession, custody and control of responsive material. HBC US was a party to the Restructuring. HBC US actively participated in multiple separate steps in the restructuring process, necessitating its execution of agreements and other documents. It is inconceivable that HBC US does not possess agreements to which it was a party. In addition, Movants have the practical ability to obtain documents. HBC US shares executives with other HBC entities, and Movants nowhere aver that other HBC entities' documents are kept segregated from those HBC US officers. Under the governing authorities, to the extent these overlapping officers possess documents, they are deemed in the possession, custody and control of HBC US.

The impact of the HBC Restructuring on CBRE is significant. HBC as guarantor owes CBRE in excess of €69 million. In the face of this liability and others, public documents reflect that HBC siphoned away from the reach of its creditors the entirety of its United States operations worth many billions of dollars, to a newly-formed holding company located in Bermuda. CBRE has a pressing need for the subpoenaed documents, both to debunk defenses raised by HBC in the Guarantee Litigation and to bolster its contemplated Restructuring Litigation. The Court should deny the Motion, and Movants should promptly comply with the subpoenas.

## Statement of Facts

The relevant facts are set forth in CBRE's petition (ECF No. 1) and the declarations of (i) David Heems, counsel to CBRE in The Netherlands (ECF No. 4), (ii) Anne Posno, Canadian counsel to CBRE (ECF No. 5), and (iii) Jonathan M. Wagner of Kramer Levin Naftalis & Frankel LLP, counsel to CBRE in this proceeding (ECF No. 6), along with the documents referenced in those declarations, which we incorporate by reference here. CBRE's memorandum in support of its Section 1782 application summarized those facts. ECF No. 2. We reiterate only the most salient facts here. We also describe developments since the issuance of the Court's Order and set out in the declarations Messrs. Wagner and Heems and Ms. Posno submitted along with this Memorandum.

### A.    The Guarantee Litigation – and Subsequent Developments

Between 2017 and 2019, HBC guaranteed the obligations of its subsidiary HBC NL under Leases with CBRE. ECF No. 4 ¶¶ 3-5 & Ex. 1. CBRE demanded payment from HBC on the Guarantees when HBC NL declared bankruptcy and the Leases terminated. HBC refused to pay, in part because HBC claims to be in "serious financial dire straits." ECF No. 5, Ex. 2. CBRE commenced an action against HBC in The Netherlands to enforce the Guarantees – the "Guarantee Litigation." ECF No. 6, Ex. 1.

Meanwhile, in late 2019 HBC engaged in a transaction whereby certain of its shareholders took the company private. Under the guise of an "internal restructuring," HBC – CBRE's guarantor – was stripped of its equity interest in HBC's American business, HBC US, whose assets appear to have been valued at $4.1 billion. That equity interest was transferred to a new Bermudan entity, Hudson's Bay Company LP or "HBC Bermuda" (all of these transactions together, the "Restructuring"). CBRE believes that this Restructuring gives rise to claims in The Netherlands and/or Canada similar to fraudulent conveyance and

breach of fiduciary duty claims, because at the time of the Restructuring HBC was already deeply insolvent and indebted to CBRE and others. ECF No. 4 ¶¶ 10-15; ECF No. 5 ¶¶ 7-13.

CBRE's Petition in the Guarantee Litigation and its Section 1782 application anticipated that HBC would raise as a defense its "financial dire straits" and inability to pay. ECF No. 6, Ex. 1; ECF No. 1. That expectation has now been confirmed by HBC's "Statement of Defense" filed in the Guarantee Litigation. Heems Opp'n Decl., Ex. B.  There, HBC pleads that on account of COVID-19, its economic condition has worsened and thus HBC should be relieved from its guarantee obligations. The pleading quotes the declaration of HBC's Ian Putnam submitted in the Wilmington Trust Litigation, and then claims that "corona measures promulgated in North America have hit HBC hard and qualify just as well as circumstances that were not foreseen when the parties agreed to the [guarantees]." *Id.* ¶ 5.84. HBC goes on to cite Dutch Civil Code Article 6:258, which provides that under certain circumstances a court may "modify the effects of a contract . . . on the basis of unforeseen circumstances, . . . in accordance with generally held standards of reasonableness and fairness." *Id.* ¶¶ 5.79-5.85; Heems Opp'n Decl. Ex.C. By doing so, HBC has affirmatively put its own financial status at issue in the Guarantee Litigation as part of its defense. CBRE plans to rebut that defense by showing that HBC's worsening financial condition was occasioned at least in part by the transfer of HBC assets in the Restructuring. Heems Opp'n Decl. ¶ 8.

Other recent litigation-related developments include:

- HBC filed a claim against HBC NL in the HBC NL bankruptcy. CBRE has successfully moved to attach this claim as security for fulfillment of CBRE's claims against HBC. This means that if HBC recovers anything from HBC NL, that recovery first goes to CBRE. *Id*. ¶ 4. As set forth in Mr. Heems' accompanying declaration, "Under Dutch law, the financial situation of the party against which the attachments are levied – HBC – is a relevant argument for showing the need for the attachments . . . ." *Id.* ¶ 5.

- CBRE has expanded the types of claims that it is considering bringing against HBC in The Netherlands. CBRE is now also contemplating an action requiring HBC to post security for CBRE's Guarantee claims against HBC. *Id*. ¶ 6. That prospective claim likewise puts at issue HBC's financial state. *Id*.

## B.    Relevant Procedural History

CBRE commenced this proceeding on September 4. The Court granted CBRE's ex parte Section 1782 application on September 11. ECF No. 8. After CBRE served the Subpoenas, the parties engaged in meet-and-confer sessions that unfortunately were not fruitful. On November 5 Movants moved to quash the Subpoenas and vacate the September 11 Order.

## Argument

## THE COURT SHOULD DENY THE MOTION

CBRE's application meets all the Section 1782 statutory requirements, and the discretionary Section 1782 factors all weigh heavily in CBRE's favor.

## A.    CBRE Satisfies Section 1782's Statutory Prerequisites

As demonstrated in its Section 1782 application (ECF No. 1), CBRE meets Section 1782's three statutory criteria. *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 255-56 (2004). Movants dispute only that (i) Mr. Schwartz is not "found" in this district, and (ii) the discovery sought is not "for use" in foreign proceedings. Movants are wrong on both counts.

### 1.  Mr. Schwartz Is Found in this District.

Movants assert, without any supporting declaration from Mr. Schwartz or anyone else, that he is not found in New York. They base their argument on Mr. Schwartz having been served in New Jersey. Movants' Br. 18-19. Movants, however, do not deny that Mr. Schwartz works in Manhattan – as the several documents establish. *See, e.g.*, Wagner Opp'n Decl. Ex. 1. The documents also show that Mr. Schwartz is licensed to practice law in New York. The State

Bar registry lists his business address as "225 Liberty Street, New York, N.Y. 10281 (New York County)," and provides a New York telephone number. *Id.* at Ex. 2. Mr. Schwartz is also licensed to practice law in New Jersey. Yet even his New Jersey bar registration records state that he is employed in the City and State of New York. *Id.* at Ex. 3.

Because Mr. Schwartz's office is in New York, he is "found" in the district for purposes of Section 1782. *See, e.g., In re ALB-GOLD Teigwaren GmbH*, 2019 WL 4140852, at *8 (E.D.N.Y. Aug. 30, 2019) (holding that individuals who work in Brooklyn are "found" in that district for Section 1782 purposes), *subsequent application for discovery granted*, 2020 WL 122943 (E.D.N.Y. Jan. 10, 2020) (concluding that a person conducting business in New York is "found" here); *In re Stati*, 2018 WL 474999, at *7 (D. Mass. Jan. 18, 2018) (finding that the proposed deponents worked in the district, and thus were "found" there); *In re Republic of Ecuador*, 2011 WL 4089189, at *2 (E.D. Cal. Sept. 13, 2011) ("Dr. Mackay is currently employed at the University of California at Davis, and thus can be found within the jurisdiction of this Court.").

The cases cited by Movants are not to the contrary – and in fact support CBRE's position. They hold that a person served with a subpoena is "found" for Section 1782 purposes when they are tagged with service. But the cases do not say that one *must* be tagged in a jurisdiction to be found there, as Movants incorrectly assert. Movants' Br. 19. In fact, the Court of Appeals rejected this argument in *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019), a decision cited by Movants. There, the Court stated that it "did *not* conclude that tag jurisdiction was *necessary* to satisfy § 1782." *Id.* at 527 (emphasis in original). Rather, the Court held that "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due

process." *Id*. These decisions favor "a flexible reading of the phrase 'resides or is found.'" *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002).

Movants go on to contend that since Mr. Schwartz was not tagged in New York, CBRE could assert jurisdiction over him only by establishing a nexus between Mr. Schwartz's "contact with th[is] forum" and the information sought – a nexus which, according to Movants, is lacking here. Movants' Br. 19. As noted above, however, jurisdiction over Mr. Schwartz exists because among other facts he works here. Moreover, any requisite nexus between Mr. Schwartz's contacts with this forum and the information sought is readily apparent. CBRE seeks Mr. Schwartz's deposition because of his work in New York City as General Counsel of HBC US (Wagner Opp'n Decl. Ex. 1), thereby also giving the Court specific jurisdiction over Mr. Schwartz in accordance with Fed. R. Civ. P. 4(e) and CPLR 302. *See, e.g., Alden Personnel Inc. v. David*, 38 A.D.3d 697 (2d Dep't 2007) (defendant working in New York but living in Connecticut was subject to personal jurisdiction here where claims related to his employment).

2. *The Discovery Sought by CBRE Is "For Use" In Foreign Proceedings.*

(a) The Discovery Is "For Use" in the Guarantee Litigation.

As Movants recognize, the burden on a Section applicant to show that the requested discovery is "for use" in the foreign proceeding is "*de minimis*." Movants' Br. 22. Even were the standard more rigorous, CBRE would satisfy it. CBRE noted in its Section 1782 papers that HBC had sought to avoid responsibility for its obligations under the Guarantee on account of HBC's purported financial status, which HBC characterized as "serious financial dire straits." ECF No. 5 ¶ 6, Ex. 2; ECF No. 4 ¶ 8. The evidence of HBC's asset stripping, including siphoning its valuable American operations to a newly-formed foreign holding company, is relevant to show that HBC's financial straits are at least in part of HBC's own doing.

HBC's Statement of Defense recently filed in the Guarantee Litigation underscores the relevance of the discovery that CBRE seeks for to use in the Netherlands proceeding. HBC now affirmatively pleads its "severely impacted" operations and financial state on account of COVID-19 as an "unforeseen circumstance," which, HBC contends, excuses the company from meeting its Guarantee obligations pursuant to Article 6:258 of the Dutch Civil Code. *See* Heems Opp'n Decl. Ex. B ¶¶ 5.79-5.85. To defeat that defense, CBRE will show that HBC's secreting of assets in the Restructuring made HBC less able to withstand an economic downturn, and thus HBC's financial predicament is at least partially of its own making. Heems Opp'n Decl. ¶ 8. And since the Restructuring is relevant to the main claim in the Guarantee Litigation, Movants' argument (at 23) that this discovery is barred as purportedly relating only to post-judgment enforcement could not be more misguided.

Movants next suggest that the discovery CBRE seeks is an unwarranted "fishing expedition" because HBC purportedly has $7 billion in assets, and the Guarantee is "worth just €69 million." Movants' Br. 22. HBC cannot simultaneously ask for relief from CBRE in The Netherlands on account of HBC's "serious financial dire straits" and assert defenses based on its poor economic performance in the United States, while HBC US contends here that the HBC Group's assets significantly exceed the liability under the Guarantee. Discovery from HBC US and Mr. Schwartz will help reveal the HBC Group's true financial status – not only assets, but liabilities and liquidity too.

Beyond that, and as set forth in Mr. Heems' declaration, HBC's financial state also bears on CBRE's attachment application in the Netherlands. Heems Opp'n Decl. ¶ 5. Thus, HBC's Restructuring and related financial state is relevant in the pending foreign proceedings in at least two separate ways.

(b) The Discovery Is "For Use" in the Contemplated Restructuring
Litigation.

CBRE meets the "for use" requirement on a second, independent ground: the discovery sought qualifies as "for use" in the Restructuring Litigation that CBRE contemplates bringing either in The Netherlands or Canada.

Movants do not challenge that a proceeding "in reasonable contemplation" of the applicant satisfies Section 1782, even if the proceeding is not "pending" or "imminent." *Intel,* 542 U.S. at 247, 258-259. They nevertheless assert that the Restructuring Litigation is too speculative and a "mere twinkle in counsel's eye." Movants' Br. 24. The cases Movants cite in support at pages 24-25 are nothing like this one. For example, in *In re Certain Funds, Accounts, and/or Investment Vehicles Managed by Affiliates of Fortress Investment Group LLC*, 2014 WL 3404955 (S.D.N.Y. July 9, 2014), *aff'd sub nom. Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) ("*Fortress*"), five years had passed between the events potentially giving rise to litigation and the 1782 application. In light of that delay, the court found the claim that litigation was in "reasonable contemplation" to be disingenuous. 798 F.3d at 124. Here, by contrast, the HBC Restructuring took place earlier this year. Movants likewise misplace reliance on *In re Sargeant*, 278 F. Supp. 3d 814 (S.D.N.Y. 2017). There the court stated that the 1782 application was "bereft of even the broadest contours of what the possible [foreign] proceeding(s) . . . may entail – they are entirely embryonic." *Id.* at 823. Here, however, CBRE has already invested substantial time and effort developing its claims, engaging counsel in two separate jurisdictions and identifying the precise claims. CBRE has likewise communicated with HBC concerning those claims in a fruitless effort to avoid litigation. ECF No. 4, Ex. 3; ECF No. 6, Ex. 4.

It is also worthy of emphasis that neither of Movants' foreign attorneys states that those claims would be subject to dismissal or are not viable. The declaration of Mr. Harrison, Movants' Canadian lawyer, merely avers that claims contemplated by CBRE would be subject to "potential preliminary challenges." Harrison Decl. ¶ 4. He does not identify any substantive challenge – only technical ones: "to the court's jurisdiction over the defendant" or "failing to meet technical pleading requirements." *Id*. The declaration of Mr. Korte, HBC's Dutch counsel, likewise questions only whether Dutch courts would have jurisdiction over potential parties, not whether the contemplated claims are meritorious. Korte Decl. ¶ 18.

In an equally weak argument, Movants assert that CBRE's claims must be too speculative and indefinite for Section 1782 purposes because CBRE's declarants mentioned that the nature of the allegations against HBC might change depending on what discovery reveals. Movants' Br. 23-25. That makes no sense. Of course the discovery obtained will affect the allegations, because the discovery will reveal facts, and CBRE will conform its allegations to those facts. In no way does that suggest that the Restructuring litigation is speculative.

Finally, and as set forth in Mr. Heems' declaration, CBRE is contemplating bringing a summary proceeding in the Netherlands requiring HBC to post security. HBC's financial condition, including the Restructuring, would be at issue in that proceeding too. Heems Opp'n Decl. ¶ 6.

In short, the Section 1782 discovery that CBRE seeks is directly relevant in two ways in pending proceedings, and in two ways in contemplated proceedings – and thus well meets the *de minimis* "for use" standard.

**B.      The Discretionary Factors Weigh In Favor of Granting CBRE's Application**

       *1.   HBC US and Mr. Schwartz Are Non Participants in the Dutch Proceedings.*

Movants acknowledge they are not litigants before the Dutch Court. Instead, they contend that "for all intents and purposes" CBRE is seeking discovery from HBC. Movants' Br. 9-12. That is incorrect. The vast majority of cases considering the issue of subpoenaing affiliates of the foreign litigant do not deny discovery on this basis. *See In re Ex Parte Application of Porsche Automobil Holding SE*, 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016) (in Section 1782 application, rejecting argument that affiliates or individuals related to a party – in that case general partners and investment managers of the litigant – are before the foreign court); *In re Top Matrix Holdings Ltd.,* 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) (in Section 1782 application, holding that affiliates and personnel "have separate legal personalities" from the litigant); *In re Aso,* 2019 WL 2345443, at *3 (S.D.N.Y. June 3, 2019) (same).

Movants' citations at pages 9-12 are of no help on this motion. The first two – *Schmitz v. Bernstein Liebhard & Lefshitsz, LLP*, 376 F.3d 79, 86 (2d Cir. 2004) and *Kiobel v. Cravath Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018) – do not involve corporate affiliates at all, and are otherwise distinguishable. In *Schmitz*, the applicant sought discovery from the Cravath law firm concerning its client Deutsche Telekom AG ("DT"), which was a litigant in proceedings in Germany. Cravath possessed documents only because it was the agent for DT. *Kiobel* likewise concerned an applicant seeking documents from Cravath, again because it served as counsel to a foreign litigant. In sharp contrast, HBC US is not the agent or law firm for HBC. And CBRE has good reason to seek documents from HBC US. HBC US was an active participant in the Restructuring transactions, as further described at pages 21-22 below. In that Restructuring, HBC transferred away its equity interest in HBC US – with assets valued around

$4.1 billion. That left HBC with fewer assets to satisfy the Guarantee. HBC US itself is a focus of what CBRE wants to explore.

This is not "for all intents and purposes" discovery from HBC as Movants mistakenly contend. Movants' Br. 9. Moreover, Mr. Schwartz is an officer of HBC US. Wagner Opp'n Decl. Ex. 1. It is thus not the case that CBRE seeks his deposition solely because he is an agent of the party to the foreign litigation.

Movants also cite *In re Atvos Agroindustrial Investimentos S.A.*, 2020 WL 4937084 (S.D.N.Y. Aug. 24, 2020). There the applicant sought discovery from its adversary in the foreign litigation, an entity known as "LSF10." Therefore, the first *Intel* factor could not be met, and the Court denied discovery from LSF10 on that basis. *Id.* at *5, *7. The court both granted and denied discovery from various other entities. Some of the entities from whom discovery was denied were affiliates of LSF10 (referenced as the "Lone Star Respondents"). The decision does not explain why the applicant contended the Lone Star Respondents would have possessed relevant information, but the decision implies that the expectation was based *solely* on those entities' corporate affiliation with LSF10. *Id.* at *7-8. Here, however, HBC US itself was at the core of and an active participant in the Restructuring.

Another material distinction between our case and *Atvos* is that in *Atvos* the Lone Star Respondents' declarant stated that those entities "do not possess any discovery relevant to the [foreign proceedings] that is outside LSF10's possession, custody, or control." *Id.* at *7. Movants have not submitted any such declaration here. Instead, HBC US' representative Suzanne Lee declares that HBC GP LLC ("GP LLC"), a new entity that now manages all of the HBC Group, "has ultimate authority over any documents responsive to the Subpoena (where such documents exist). US Holdings [i.e., HBC US] does not have legal rights to any responsive

documents to the extent such documents exist and GP LLC will not authorize US Holding's affiliates to provide any such materials." Lee Decl. ¶ 10. These words are not particularly clear. At minimum, unlike *Atvos* Ms. Lee does *not* aver that HBC US does not have possession, custody or control of responsive documents, or that all such documents are in the foreign litigant HBC's control. To the contrary, Ms. Lee's declaration seems to suggest that HBC US *does* have possession, custody, control, and also has the practical ability to cause production of relevant documents, except "to the extent" GP LLC, which is not a party to this proceeding or Motion, is purporting to forbid their production, contrary to the Court's September 11 Order.

Section 1782 does not work that way. The Subpoenas, authorized by this Court, cannot be stymied simply because HBC US' corporate affiliate does not want HBC US to produce. *See* pages 22-24 below (citing cases regarding the broad meaning of the term "control" under the Federal Rules, and describing why HBC US meets the relevant criteria).

Movants also contend that, because some of the document requests seek information *about* HBC, CBRE is really seeking discovery *from* HBC. Movants' Br. 9-10. This argument is meritless. It is hardly surprising that CBRE is seeking discovery *about* HBC; HBC is CBRE's adversary in the foreign litigation.

### 2. Dutch (and Canadian) Courts Are Receptive to Information Obtained Here

Movants do not challenge CBRE's showing at 15-16 of its Section 1782 Moving Brief that courts in the Netherlands and Canada are receptive to information obtained in Section 1782 proceedings.

### 3. CBRE Is Not Attempting to Circumvent Restrictions on Foreign Proof Gathering

Movants' argument concerning this third *Intel* factor distills to the following: the discovery CBRE seeks *is* available in foreign proceedings, but not right now; so asking for this discovery now in the United States circumvents restrictions on foreign proof gathering. Movants'

Br. 14-15. This approach misstates the law. "Section 1782 contains no foreign-discoverability requirement." *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015). Furthermore:

> That a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means. "[P]roof gathering restrictions" are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information.

*Id.* at 303 n.20 (emphasis in original). Here, Movants do not contend that there is some privilege or rule in The Netherlands or Canada prohibiting the acquisition of the information CBRE seeks. Rather, they contend that the rules permit the discovery, just not *now*. Under *Mees*, that is not a circumvention of foreign proof gathering.

Both Ms. Posno (Canada) and Mr. Heems (The Netherlands) aver that their respective jurisdictions would accept as evidence material obtained from this Section 1782 proceeding. ECF No. 5 ¶ 15; ECF No. 4 ¶ 21. Significantly, the declarations of HBC's foreign counsel do not claim otherwise. That alone establishes that CBRE is not circumventing restrictions on foreign proof gathering. *See In re Ex Parte Tiberius Grp. AG*, 2020 WL 1140784, at *5 (S.D.N.Y. Mar. 6, 2020) ("courts routinely grant § 1782 applications where the discovery sought might not be available in the foreign legal system, but is not explicitly prohibited from being acquired by way of a § 1782 application").

Nor do the cases cited by Movants (Movants' Br. 14-15) help on this motion. In *Intel* the Court found that the Section 1782 applicant circumvented foreign proof gathering restrictions by seeking discovery from an actual party to the foreign proceeding. 542 U.S. at 264. In *Atvos*, the applicant sought discovery from LSF10, a litigant in the foreign tribunal, and from certain of its corporate affiliates that seem to have been subpoenaed for no reason other than their

corporate affiliation to LSF10. 2020 WL 4937084, at *7-8. Here, however, HBC US is both (i) a nonparticipant in the existing and contemplated foreign proceedings, and also (ii) a party to and active participant in the Restructuring – which is why CBRE now seeks discovery from HBC US. In *In re RSM Production Corporation*, 2018 WL 1229705, at *4 (S.D.N.Y. Mar. 9, 2018), the Section 1782 applicants sought discovery from an Israeli entity even though the foreign proceeding was in Israel. Here, CBRE seeks documents from a New York entity, not a Dutch or Canadian one. *RSM* is distinguishable on other grounds as well, including that the Section 1782 applicants were "serial litigants" who had been "repeatedly sanctioned for bad faith." *Id.*

       4.   *The Discovery CBRE Seeks Is Narrowly Tailored*

           Movants' argument – without any supporting affidavit or other proof – that the discovery CBRE seeks is unduly burdensome (Movants' Br. 12-14) ignores the narrow scope of CBRE's Subpoenas. Request No. 1 seeks documents already produced by HBC in another litigation. Given the overlap of officers of HBC and HBC US, *see* pages 23-24 below, both sharing offices at 225 Liberty Place, and because HBC US is represented by the same law firm representing HBC in that other litigation, HBC US likely can obtain these documents with virtually no burden. To further limit burden, CBRE's Request No. 2, which contains subparts (a) through (k), seeks documents only "[t]o the extent not included in the documents produced in response to Request No. 1." This second request asks for financial documents as well as documents concerning the Restructuring. The request does not seek emails or similar communications – thereby eliminating what is typically the most burdensome aspect of discovery collection, review and production. The subparts list clear and narrowly-formulated categories. There are no requests like those often seen in discovery seeking "all documents" concerning a broad subject matter. In sharp contrast, all of CBRE's requests are targeted.

Some of the documents requested are likely already sitting in a folder on a computer server. For example: "Organizational charts for the HBC Group . . . both immediately prior to, and after giving effect to, the Restructuring." Ms. Lee's declaration already puts forward a simplified version of such a chart. Or, another example: "Closing sets for, and all transactional documentation pertaining to the Reorganization . . . ." In the Wilmington Trust Litigation, HBC's counsel represented that HBC would likely produce to plaintiff in that case a "binded set of closing documents" from the Restructuring. ECF No. 24-1, at 48:8-10.

Against this backdrop and even overlooking the absence of a supporting declaration, none of the many burden arguments raised by Movants poses any obstacle to the Section 1782 discovery sought by CBRE:

- Movants contend, in conclusory fashion, that CBRE seeks "an enormous volume of financial information." Movants' Br. 12. The only category of documents of which Movants specifically complain are the types of financial documents that a commercial enterprise would maintain as a matter of course: "financial statements . . . balance sheets, income statements, cash flow statements and retained earnings statements." *Id.* Certainly an enterprise as sophisticated as the HBC Group would maintain such documents for many if not all entities, and the limited documents in the public domain that CBRE has collected and discussed at pages 21-22 below demonstrate that HBC US should possess such documents. CBRE has also limited its requests to the time period immediately surrounding the Restructuring. *See, e.g.*, ECF No. 6, Ex. 6, Doc. Req't No. 2(a) and (b) – further eliminating burden and keeping the Subpoena narrowly tailored.

- Without any particulars, Movants maintain that the documents requested are "irrelevant" to the Guarantee Litigation or the Restructuring Litigation. Movants' Br. 13. In the Section 1782 context, relevance "is broadly construed 'to encompass any matter that bears on or

that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *In re Sveaas,* 249 F.R.D. 96, 106-07 (S.D.N.Y. 2008) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). *See also Mees,* 793 F.3d at 298 n.8 (describing broad relevance standard). And "because the Court is called upon only to resolve a discovery issue that arises from underlying litigation in foreign jurisdictions, the court should be particularly wary of denying discovery on relevance grounds." *Sveaas,* 249 F.R.D. at 107; *see also In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003) (same). For the same reasons that the documents in question meet the Section 1782 "for use" standard, *see* pages 8-11 above, the documents are highly relevant to both the pending and contemplated foreign proceedings.

- Movants maintain that they will need to "tiptoe[] through complicated privilege issues." Movants' Br. 12. That is unlikely; CBRE has not requested emails or communications, thereby eliminating the documents most likely to contain attorney-client communications. The financial statements and transaction documents that CBRE seeks are also not likely to contain any privileged content – that simply is not the nature of those types of documents. It is possible that some of the presentations or meeting minutes that CBRE seeks may contain some privileged information. If so, that information can be redacted and logged, as is typical and as provided by the Federal Rules. Any such undertaking is not as significant as Movants try to portray.[1]

---

[1] *In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. and Logistic Solution Int'l to Take Discovery of Chadbourne & Parke LLP*, 60 F. Supp. 3d 419, 431-22 (S.D.N.Y. 2014), cited by Movants (at 13-14), is inapposite. In *Okean*, the court had approved numerous Section 1782 subpoenas in prior decisions, enabling the applicant to obtain discovery over the course of two years. In the cited *Okean* decision, the court was faced with a subpoena to Chadbourne & Park LLP, counsel to parties in the foreign litigation at issue. Unlike non-lawyer HBC US, Chadbourne was not involved in events underlying that litigation other than as counsel. For these reasons – and other distinct facts present in *Okean* and not present here – *Okean* does not support Movants' hyperbolic statement that compliance with the Subpoenas would "involve analyzing a minefield of potential privilege issues and related confidentiality concerns." Movants' Br. 13.

- Movants assert that because HBC US is a "holding company," responding to the Subpoenas would be burdensome. Movants' Br. 12. There is no reason why this should be so. Even were HBC US merely a holding company – and as noted at page 22 below, public documents suggest otherwise – HBC US has functioning personnel. They include Mr. Schwartz and Ian Putnam, who detailed the Restructuring in his declaration in the Wilmington Trust Litigation. *Compare* ECF No. 6, Exs. 3 & 10 *with* Wagner Opp'n Decl. Exs. 1 & 4. HBC US is also part of a multi-billion dollar conglomerate that operates a giant commercial business, and is represented here and elsewhere by sophisticated and respected counsel. Responding to CBRE's narrowly tailored Subpoenas is well within HBC US' capabilities.

- Movants complain of the burdens of two depositions. Movants' Br. 13. A multi-billion dollar enterprise can bear any such burden.  Nor are two depositions disproportionate to the needs of litigation seeking recovery of €69 million. And contrary to Movants' argument (*id.* at 13), Mr. Schwartz was not subpoenaed as a Rule 30(b)(6) witness, and he does not need to familiarize himself with new information. CBRE does seek the deposition of a single corporate representative – and HBC US can identify a witness who is already knowledgeable, further limiting any burden.

- In a footnote, Movants warn that they have "also raised a number of objections to the subpoenas to CBRE including that the subpoenas are overbroad, that Respondents would address in response to a motion to compel, if necessary." Movants' Br. 14 n.3. Movants have already joined issue on the scope of the Subpoenas, raising the many issues addressed above. One motion is enough.

**C.**      **Movants' Remaining Arguments Are Meritless**

      *1.  HBC US has Possession, Custody, Control and the Practical Ability to Obtain the Requested Documents.*

A subpoenaed party is required to produce responsive documents in its possession, custody or control. Fed. R. Civ. P. 45; *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 447 (S.D.N.Y. 2011). For several independent reasons set forth below, HBC US in all likelihood has possession and custody – as well as control – of responsive documents.

In their brief, Movants make several statements – all unsupported – in an attempt to suggest that HBC US does not have the possession, custody, control of responsive documents, or the legal right or practical ability to produce them. Movants' Br. 15-18. They also attribute various statements in their brief to Ms. Lee's declaration. However, the Lee declaration does not support the conclusory statements in Movants' brief. We highlight Movants' major failings:

Movants declare that "US Holdings does not have any responsive documents – the only theoretical documents that would be responsive would be in HBC ULP [i.e., HBC] and HBC L.P.'s [i.e., HBC Bermuda's] control." *Id.* at 10. Movants do not cite any declaration in support of this statement. Elsewhere in their brief, Movants represent that HBC US "does not possess or control any document responsive to the Subpoenas." *Id* at 16. Again, Movants cite nothing. Movants likewise reference paragraphs 6 and 10 of Ms. Lee's declaration. Paragraph 6 merely states that HBC US is a "holding company" for the HBC Group's American subsidiaries, purportedly with no "independent operations." Paragraph 10, as already addressed above at pages 13-14, merely states that GP LLC has "ultimate authority" over any of HBC US' documents. As GP LLC apparently is the management entity for all the HBC Group (Lee Decl. ¶ 5), it is not surprising that it has "ultimate authority." That does not say or mean that HBC US lacks possession, custody or control over documents or lacks the practical ability to produce

them. Movants also state in their brief that HBC US "made a reasonable good faith effort to ascertain whether it possess responsive documents." Movants' Br. 16. Again, Movants cite nothing. In an omission that speaks volumes, Ms. Lee does not aver that she searched HBC US' documents and found no responsive materials.

Ms. Lee makes only the cryptic statement that "US Holdings does not have legal rights to any responsive documents to the extent such documents exist and GP LLC will not authorize US Holding's affiliates to provide any such materials." Lee Decl. ¶ 10. The meaning of this statement is unclear. One possibility is that HBC US does not have a legal right to documents in the hands of its affiliates "to the extent" GP LLC prohibits those affiliates from providing documents. Regardless, however, Ms. Lee does not say that HBC US itself lacks possession, custody or control of responsive documents, or that HBC US lacks the practical ability to obtain or get access to responsive documents. In another telling omission, the words "possession, custody and control" do not appear in the Lee declaration at all.[2]

Contrary to Movants' unsupported statements and mischaracterizations of Ms. Lee's Declaration, the limited material that CBRE has been able to assemble, despite the opacity of HBC US' operations, demonstrates that HBC US *does* have possession, custody, control of as well as legal rights and the practical ability to produce documents responsive to the Subpoenas. HBC US also has some operations. For example:

- A PowerPoint presentation prepared by HBC's tax advisors and filed in the Wilmington Trust Litigation makes clear that HBC US was actively involved in the Restructuring. *See* Wagner Opp'n Decl. Ex. 5. Slides 10, 11, 14, 16 and 20 show that

---

[2] Movants also claim in their brief that HBC US "raised CBRE's subpoenas with HBC L.P., its ultimate parent" but "HBC L.P. did not provide [HBC US] any responsive materials." Movants' Br. 17. In support of this statement, Movants cite paragraph 10 of Ms. Lee's declaration. That paragraph again does not say what Movants contend. The paragraph references GP LLC, not HBC L.P., and does not say either that HBC L.P. refused to provide responsive material or that HBC US does not have any responsive material of its own.

as part of the Restructuring HBC US was required among other steps to make loan draws and dividend payments, acquire new subsidiary entities, participate in share exchanges, and convert into an LLC at a specified time. It is inconceivable that HBC US does not have Restructuring-related agreements to which it was a party.

- HBC US filed various documents that were part of the Restructuring, including a Certificate of Conversion and a new Certificate of Formation. *Id*. Exs. 6 & 7.

- A monthly financial report filed in the bankruptcy of Le Tote, Inc., the entity that acquired Lord & Taylor from HBC US in November 2019, states that "[t]he financial information has been derived from the books and records of the debtors *and the books and records of HBC US Holdings, Inc.* and HBC US Propco Holdings LLC (collectively, 'HBC') which provide certain accounting, treasury, and accounts payable services to the Debtors pursuant to [a transition services agreement]." *Id*. Ex. 8 at 3 (emphasis added).

These documents demonstrate among other things that HBC US has possession and custody of at least some documents responsive to CBRE's document Subpoena, including documents concerning the Restructuring as well as financial information. The public materials also indicate that HBC US does have operations sufficient to maintain and provide to Le Tote, not only books and records, but also accounting, treasury and accounts payable services.

Even if HBC US did not have possession or custody of the documents, HBC US can still be required to produce documents over which it "lacks actual physical possession or custody" if it has "control" over such documents. *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014). *Accord Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2016 WL5408171, at *5-6 (S.D.N.Y. Sept. 27, 2016) (collecting citations). On this ground too, the Court may and should direct HBC US to comply with the Subpoena.

Courts "constru[e] the word 'control' broadly." *Id.* at *5. Control exists when the subpoenaed party is "legally entitled to the documents or has the practical ability to acquire the documents from a third party," *Gross*, 304 F.R.D. at 142. And practical ability is considered independently, "'irrespective of [the subpoenaed party's] legal entitlement to the documents.'" *Raimey v. Wright Nat'l Flood Ins. Co.*, 76 F. Supp. 3d 452, 470 (E.D.N.Y. 2014) (citation

omitted). And when there is a record of "close coordination" or a "history of cooperation" between the subpoenaed party and a third party, there exists the "practical ability" to acquire the documents sufficient to constitute control. *Gross*, 304 F.R.D. at 143.

   The documents cited above, including those addressing the Restructuring itself, reflect a "close coordination" and a "history of cooperation" among HBC US and other HBC Group entities, confirming that HBC US even if not directly possessing responsive materials – however far-fetched that might be – has the "practical ability" to obtain the documents. *Id.* That coordination and cooperation is reflected in other ways as well. For example, documents show that other HBC Group entities as well as their officers share offices at 225 Liberty Street in New York – the same address as HBC US. Wagner Opp'n Decl. Exs. 1, 2, & 9. Nothing suggests that these entities, while sharing personnel and office space, segregate documents or information from one another through separate folders or servers or other means. If they did so, one would have expected HBC US to say so in its motion papers. One can therefore infer that the HBC entities (or at least some of those entities) do *not* keep one HBC entity's information separate from any others'. To the contrary, because they share personnel and office space and likely computer systems too, the opposite appears true. Ms. Lee's declaration unwittingly confirms this point. Although she is deputy general counsel of HBC US, she clearly is aware of and has access to information about the acts of GP LLC, the entire enterprise's corporate structure, and certain facts about the operations of all HBC Group entities. Lee Decl. ¶¶ 3-5.

   As yet another reason to deny the Motion, HBC US' officers also have possession, custody and control of relevant documents – including those concerning the Restructuring. "Courts have repeatedly found that employers have control over their employees and can be required to produce documents in their employees' possession." *Chevron Corp.*, 275

F.R.D. at 448-49 (collecting cases); *see also C.A. Inc. v. AppDynamics, Inc.*, 2014 WL 12860591, at *3 (E.D.N.Y. Sept. 8, 2019) (collecting cases holding that "corporations have control over their officers and employees sufficient to require production of the documents in their possession"). Based on the limited publicly-available information, HBC Group officers wear multiple hats. Mr. Putnam, who as "President of Real Estate of Hudson's Bay Company Group of Companies" (ECF No. 6, Ex. 3 at ¶ 1) submitted a declaration in the Wilmington Trust Litigation describing the Restructuring, also serves as "Chief Corporate Development Officer" of HBC US. Wagner Opp'n Decl. Ex. 4. Mr. Putnam has been a particularly active HBC officer over the years and continuing to this day.  As an HBC US officer, Mr. Putnam: (i) signed HBC US' Certificates of Conversion and Formation that were part of the Restructuring (*id.* Exs. 6 & 7), (ii) is listed as the "Incorporator" of HBC US' predecessor Lord & Taylor Acquisition (*id.* Ex. 10), and (iii) signed in his capacity as HBC US' "President, Real Estate and Chief Corporate Development Officer" an amendment to that entity's Certificate of Incorporation changing the name to HBC US Holdings. *Id.* Ex. 4. Likewise overlapping, Mr. Schwartz is HBC US Executive Vice President and General Counsel and a Director of the Company (*id.* Exs. 1 & 11), and also serves as General Counsel of HBC. *Id.* Ex. 2. As another example, Jeffrey Levy is an officer of HBC US and Vice President of HBC. *Id.* Exs. 11 & 12.

Under settled law, all the documents in the possession, custody or control of these and other officers are properly considered within HBC US' control, and should be produced in response to the Subpoenas. *Royal Park*, 2016 WL 5408171, at *5.

As a final point, if in fact – against all evidence – HBC US does not have possession, custody or control of any documents, then it is hard to understand why Movants argued so fervently that production of the requested documents would be burdensome.

*2. Service was Proper*

      Movants assert that the Court should quash the subpoenas because "CBRE failed to serve any validly executed subpoenas on US Holdings" as "[t]he subpoenas that counsel for CBRE has identified as the subpoenas served on US Holdings have no signature." Movants' Br. 18. This argument is not serious.

      *First*: HBC US does not deny receipt of the Subpoenas. They were served formally on HBC US' agent for service (Wagner Opp'n Decl. Ex. 13), and also sent as a courtesy to HBC US' counsel (*id*. Ex. 14). Any supposed deficiency on account of a missing signature should be excused in the time of COVID-19, when in-person execution of documents is difficult. Nor has HBC US identified any prejudice on account of this hyper-technical issue.

      *Second*: CBRE personally served Mr. Schwartz with all three Subpoenas – signed. *Id.* Ex. 15. Mr. Schwartz is listed as "EVP [Executive Vice President], General Counsel" of HBC US. *Id.* Ex. 1. He is also a Director of the company. *Id*. Ex. 11. Service on Mr. Schwartz suffices for service on HBC US. *See, e.g.*, *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 595-96 (E.D.N.Y. 2013) (stating that LLCs may be served, among other ways, in accordance with Fed. R. Civ. P. 4(h)(1)(B) on an officer of the entity).

      *Third*: to dispel all doubt – although there should be none – upon learning of Movants' belated complaints about service CBRE re-served on HBC US' agent for service the signed subpoenas. Wagner Opp'n Decl., Ex. 16.

| | |
|---|---|
| Dated:  New York, New York<br>        November 30, 2020 | KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>By: /s/ Jonathan M. Wagner<br>      Jonathan M. Wagner<br>      Daniel M. Eggermann<br>      Natan M. Hamerman<br>1177 Avenue of the Americas<br>New York, New York 10036<br>(212) 715-9100<br>*Attorneys for Petitioners* |