USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/9/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
IN RE APPLICATION OF CBRE GLOBAL      :
INVESTORS (NL) B.V., CBRE DRET        :
CUSTODIAN I B.V., CBRE DHC MAASTRICHT :        20-MC-315 (VEC)
(GROTE STAAT V) B.V., AND CBRE DHC DEN :
HAAG (GROTE MARKSTRAAT V) B.V.,       :        OPINION AND ORDER
                                      :
              Petitioners,            :
                                      :
For an Order Granting Leave to Issue Subpoenas :
for Discovery in Aid of Foreign Proceedings :
Pursuant to 28 U.S.C. § 1782.         :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

On September 4, 2020, Petitioner CBRE Global Investors (NL) B.V., along with other

CBRE entities (collectively "CBRE"), filed an application pursuant to 28 U.S.C. § 1782 for

discovery from Respondents HBC US Holdings LLC ("HBC US") and its General Counsel,

David Schwartz. Petition, Dkt. 1. CBRE's purpose was to obtain discovery in aid of two foreign

proceedings, one ongoing, the other then-contemplated but since commenced. CBRE seeks

discovery of documents pertaining to a recent restructuring of HBC's broader group of corporate

entities and to the financial health of various HBC entities.[1] CBRE also seeks to depose Mr.

Schwartz and an HBC US corporate representative. On September 11, 2020, the Court granted

CBRE's petition without prejudice to HBC US and Mr. Schwartz filing a motion to vacate and

quash. Order, Dkt. 8. Respondents have moved to quash the subpoenas and to vacate the

Court's September 11, 2020 Order. Notice of Mot., Dkt. 19. For the reasons set forth below,

---

[1]     Hudson's Bay Company, or HBC, is the former parent company of the HBC group of entities. As
discussed below, incident to an internal restructuring, HBC converted to HBC ULC, and a new entity, HBC L.P. or
HBC Bermuda, is now the parent company of the HBC group of entities. For ease of reference, when referring to
the former entity known as HBC, now known as HBC ULC, the Court will use HBC ULC, regardless of whether the
temporal circumstances indicate that the entity had not yet been converted to HBC ULC. When referring to the new
parent company, the Court will use HBC L.P., and when referring to the overall group of HBC entities, the Court
will use either HBC, the HBC entities, or the HBC Group.

with respect to the document subpoena and the subpoena of an HBC US corporate representative, Respondents' motion is DENIED, subject to certain limitations on the scope of the subpoenas.  Respondents' motion to quash the subpoena noticing Mr. Schwartz's deposition is held in abeyance pending the deposition of HBC US's corporate representative.

## BACKGROUND

CBRE is a major commercial real estate owner and operator.  CBRE Mem. at 1, Dkt. 2. HBC is a multinational owner and operator of retail stores, primarily in the United States and Canada.  Resp. Mem. at 3, Dkt. 20.  In 2017, CBRE leased multiple retail locations in the Netherlands to HBC Netherlands B.V. ("HBC NL"), HBC's Dutch affiliate.  CBRE Mem. at 3; Declaration of David Heems ("Heems Decl.") ¶ 3, Dkt. 4.  HBC ULC guaranteed HBC NL's obligations under the leases and guaranteed compensation for any loss resulting from early termination of the leases.  CBRE Mem. at 4; Heems Decl. ¶¶ 5–6.  In August 2019, HBC ULC announced that it was terminating its Netherlands operations; HBC NL was declared bankrupt in late 2019, and CBRE's leases were terminated by the bankruptcy trustees in February 2020. CBRE Mem. at 4; Heems Decl. ¶ 7.  When HBC ULC refused to pay on the guarantees, CBRE sued HBC ULC in the Netherlands to enforce the guarantees (the "Guarantee Litigation"). CBRE Mem. at 4–5; Heems Decl. ¶¶ 8–9.[2]

In October 2019, HBC publicly announced that a group of shareholders were taking the company private.[3]  Declaration of Ian Putnam ("Putnam Decl.") ¶ 7, Dkt. 6-3.  The take-private transaction was completed on March 3, 2020.  *Id.*  Incident to the take-private transaction, on or

---

[2]     In connection with the Guarantee Litigation, in November 2020, to obtain security for HBC ULC's obligation under the guarantees, CBRE initiated proceedings for leave to attach a claim asserted by HBC ULC in HBC NL's bankruptcy proceedings.  *See* Declaration of David G.J. Heems ("Heems Second Decl.") ¶¶ 4–5, Dkt. 32.

[3]     There is no contention that HBC's broader restructuring was in any way related to the ongoing issues with HBC NL's business, despite the temporal proximity.

around March 3, 2020, HBC underwent an internal restructuring.  *See id.* ¶¶ 9–18.  Prior to the restructuring, HBC ULC had been a publicly-traded, Canadian company and served as the top-level holding company for the entire HBC Group, including HBC US.  *Id.* ¶ 8.  As part of the restructuring, however, HBC ULC transferred ownership of HBC US and its entire U.S. operations to a newly-formed Bermuda company, HBC L.P., which now serves as the ultimate parent company for all HBC Group entities.[4]  *Id.* ¶ 17.  HBC ULC maintained ownership of HBC's Canadian operations, despite itself being owned by HBC L.P.  *Id.*  CBRE contends that HBC's entire restructuring was concocted to elude its creditors.  *See, e.g.*, CBRE Mem. at 1.

At the time CBRE filed its application in this matter, CBRE was contemplating suing to challenge directly HBC's restructuring.  *See id.* at 2, 7–9.  On or around January 20, 2021, that contemplation ended when CBRE sued HBC ULC, HBC L.P., and other HBC entities, but not HBC US, in Canada (the "Restructuring Litigation").  *See* Notice of Civil Claim, Dkt. 40-1.  In the Restructuring Litigation, CBRE seeks, among other relief, "[a] declaration that [HBC] engaged in conduct that is oppressive, unfairly prejudicial to and unfairly disregards the interests of and the reasonable expectations of CBRE as a creditor of HBC . . . in relation to [HBC's restructuring, etc.]."  *Id.* ¶ 50.  CBRE also seeks a declaration that the conveyance of HBC US's assets from HBC ULC to HBC L.P. was a fraudulent conveyance and, therefore, null and void.  *Id.* ¶ 51.

The parties appeared before the Court for oral argument on Respondents' motion to vacate and quash on January 27, 2021.

---

[4]     There were other changes to HBC entities' corporate identities incident to the restructuring, including that HBC US converted to an LLC, *see* Dkt. 34-6; Dkt. 34-7, and that HBC ULC converted from a Canadian corporation to an unlimited liability company pursuant to the laws of British Columbia, *see* Putnam Decl. ¶¶ 11–14.

**DISCUSSION**[5]

Respondents raise a number of objections to CBRE's section 1782 application.  Distilled, Respondents argue that, although CBRE nominally seeks discovery from HBC US, a holding company without any operations and a legally distinct entity from Petitioners' adversaries in the foreign litigations, CBRE is engaged in an improper fishing expedition in which it seeks to obtain from HBC US discovery from and about HBC ULC and HBC L.P., its foreign adversaries.  That this is the correct view of CBRE's section 1782 application, Respondents argue, is evidenced by the fact that CBRE seeks from HBC US information that HBC US neither possesses nor controls and that CBRE could plainly obtain directly from its foreign adversaries as part of the foreign litigations.  Although Respondents' motion implicates several of the statutory and discretionary factors animating the Court's section 1782 analysis, as revealed at oral argument, the Court's determination ultimately hinges most critically on an assessment of whether Respondents have possession, custody, or control of the sought-after documents, and, by extension, whether the information sought by CBRE is, in fact, from HBC US, or if CBRE is just trying to use HBC US as a conduit to get to its affiliate or parent, HBC ULC and HBC L.P.

I.      **Legal Standard on Section 1782 Applications**

Pursuant to section 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ."  28 U.S.C. § 1782(a).  A district court is authorized to grant a request under section 1782 only if the applicant has met three statutory requirements: (1) discovery is sought from a person or entity residing or found in

---

[5]      In their opening memorandum, Respondents argued that there were multiple issues with service of the subpoenas on both HBC US and Mr. Schwartz.  *See* Resp. Mem. at 7, 18.  Although Petitioners disputed any issue with the initial service, they nevertheless re-served both Respondents for the avoidance of doubt, mooting this issue.  CBRE Opp. at 25, Dkt. 35.

the district; (2) discovery is for use in a proceeding before a foreign tribunal; and (3) the

applicant is an interested person before such foreign tribunal.  *See Mees v. Buiter*, 793 F.3d 291,

297 (2d Cir. 2015).

The district court has broad discretion whether to grant a section 1782 petition.  *See In re*

*Edelman*, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise

broad discretion over the issuance of discovery orders pursuant to § 1782(a) — both over

whether to grant a discovery order and, if so, what limits to place on that discovery.").  In

exercising its discretion, a district court should consider the petition "in light of the twin aims of

the statute: providing efficient means of assistance to participants in international litigation in our

federal courts and encouraging foreign countries by example to provide similar means of

assistance to our courts."  *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d

Cir. 2004) (cleaned up).  In *Intel Corp. v. Advanced Micro Devices, Inc.*, the Supreme Court

announced four factors to guide a district court's consideration: (1) whether the person from

whom discovery is sought is a participant in the foreign proceeding, such that the foreign tribunal

can itself order the person to produce evidence; (2) whether the foreign tribunal is receptive to

U.S. court assistance; (3) whether the request seeks to circumvent foreign proof-taking

restrictions; and (4) whether the request is unduly intrusive or burdensome.  542 U.S. 241, 264–

65 (2004).

Under the Federal Rules of Civil Procedure, a subpoenaed party must produce only those

documents that are in its "possession, custody, or control," Fed. R. Civ. P. 34(a)(1) &

45(a)(1)(A)(iii); *see also In re Stadtwerke Frankfurt Am Main Holding GmbH*, No. 19-MC-35,

2019 WL 3004150, at *1 (S.D.N.Y. July 10, 2019), and the party seeking discovery has the

burden "to make a showing that the other party has control over the materials sought," *Sec. &*

*Exch. Comm'n v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000).

A party not in actual possession of material may have control over it if the "party has control over material that it has the practical ability to obtain" or if the "party has control over material that it has a legal right to obtain." *Sec. & Exch. Comm'n v. Strauss*, No. 09-CV-4150, 2009 WL 3459204, at *7 (S.D.N.Y. Oct. 28, 2009) (citations omitted); *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) (holding that "control" connotes "access and the practical ability" to obtain requested documents). Where "documents ordinarily flow freely between" two affiliated entities or a parent and a subsidiary, courts will typically find that either entity has access and the practical ability to obtain documents. *See, e.g.*, *Hunter Douglas, Inc. v. Comfortex Corp.*, No. CIV. A. M8–85, 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999).

## II.    HBC US's Possession or Control of the Relevant Information[6]

The largely dispositive issue on this motion is whether HBC US has possession, custody, or control of documents of other HBC entities with which HBC US is affiliated, including its corporate parent. Among the records sought in CBRE's subpoenas are documents produced by HBC in a separate litigation to which HBC US was not a party, financial statements and related documents for HBC ULC, HBC US, HBC NL, and HBC L.P., as well as organizational charts for each of the aforementioned entities, and a variety of documents related to the HBC corporate

---

[6]    Although the Court treats the question of whether HBC US has custody, possession, or control over certain documents requested in the subpoenas as a threshold issue to be addressed before turning to the statutory requirements of section 1782 or the *Intel* factors, the Court notes that the broader issue concerning CBRE's request for financial records and documents of HBC entities other than HBC US could have been addressed as part of the Court's analysis of the first *Intel* factor; that is, whether CBRE is, in fact, using its section 1782 application as a means to obtain discovery from its foreign adversaries. Because considering the issue first makes resolution of the statutory and *Intel* factors a simpler and more efficient exercise, the Court opts to begin with the issue of possession and control. *See, e.g.*, *In re Application of Passport Special Opportunities Master Fund, LP*, No. 16-MC-33, 2016 WL 844833, at *4 (S.D.N.Y. Mar. 1, 2016). Analyzing the issue under the first *Intel* factor would lead the Court to the same ultimate result, however, because seeking documents from HBC US that plainly "belong" to HBC ULC and HBC L.P. supports the conclusion that CBRE is, at least in part, using the section 1782 application process to obtain documents from its foreign adversaries. The Court would therefore exercise its discretion pursuant to *Intel* to strike from the subpoenas the same information of which the Court concludes HBC US does not have possession, custody, or control.

restructuring.  *See* Dkt. 6-6.  The topics subject to discussion at the noticed depositions of HBC

US's corporate representative and Mr. Schwartz include all documents provided pursuant to the

document subpoena to HBC US and HBC's corporate restructuring.  *See* Dkt. 6-7; Dkt. 6-8.

    In support of their motion to quash, Respondents assert that HBC US is a holding

company, without any operations, and that it does not have possession, custody, or control over

*any* of the requested documents.  Resp. Mem. at 15–18.  Respondents further argue that HBC US

has neither the legal right nor the practical ability to obtain any responsive materials that its

affiliates and corporate parents possess or control, especially because HBC L.P. rejected HBC

US's request that it be provided responsive documents belonging to its affiliates that are

controlled or owned by HBC L.P.  *See id.*  To support their contentions, Respondents point to the

declaration of Suzanne Lee, Deputy General Counsel of HBC US, in which she states that she

"checked [HBC US's] records and consulted with the officers of [HBC GP LLC, the general

partner of HBC L.P. and] the entity that has ultimate authority over any documents responsive to

the Subpoena (where such documents exist)[, and HBC US] does not have legal rights to any

responsive documents to the extent such documents exist and [HBC GP] will not authorize [HBC

US's] affiliates to provide any such materials."  Declaration of Suzanne Lee ("Lee Decl.") ¶ 10,

Dkt. 21; Resp. Mem. at 17–18.  Respondents assert that the Lee Declaration demonstrates that

HBC US does not possess or control *any* documents responsive to the subpoenas.  Resp. Mem. at

16.

    When pressed at oral argument, counsel for Respondents stated unequivocally that

Respondents do not "have possession, custody, or control of [the requested] documents in any

way that matters."  Jan. 27, 2021 Oral Arg. Tr. at 5:19–21, Dkt. 41.  Respondents stated that,

because it is simply a holding company within the larger HBC group of entities, HBC US has *no*

*documents* of its own.  *Id.* at 6:5–8, 6:24–7:2.  Respondents' counsel conceded, however, that,

"[t]o the extent that they exist, . . . HBC US has possession, custody, and control of its own materials." *Id.* at 6:22–24; *see also id.* at 7:17–21 ("I absolutely agree . . . that if there are actually documents that are actually documents of HBC US, be they financial or otherwise, those are documents that are in [HBC US's] possession, custody and control.").

Although "[u]nder ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in [its] possession, custody or control" is sufficient to overcome a request for production, *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978), here, notwithstanding Ms. Lee's declaration, the Court does not credit Respondents' contentions to that effect. As an initial matter, it strains credulity to believe that HBC US has neither possession, custody, nor control of *any* documents that are responsive to the subpoena. Instead, the Court credits CBRE's position and supporting exhibits that demonstrate that HBC US must have possession, custody, or control of at least some responsive documents. First, despite HBC US disclaiming the existence of any standalone financial documents, the record indicates that representation is highly likely to be inaccurate. *See* Declaration of Jonathan M. Wagner ("Wagner Decl."), Ex. 8 at 3, Dkt. 34-8 (bankruptcy filing for non-HBC entity stating that "financial information has been derived from . . . the books and records of HBC US Holdings, Inc. and HBC US Propco Holdings LLC . . . , which provide certain accounting, treasury, and accounts payable services to the Debtors"). Respondents have failed to rebut meaningfully CBRE's evidence other than by referring to Ms. Lee's cryptic declaration for the proposition that HBC US has no documents of its own.

The Court similarly rejects Respondents' assertions that they do not have possession, custody, or control of documents pertaining to a restructuring *to which HBC US was a party*. CBRE has put forth documents directly undercutting Respondents' position and which, at the very least, demonstrate that HBC US engaged in various financial and legal transactions in

connection with the broader restructuring and that records exist documenting HBC US's involvement in those transactions. *See* Wagner Decl., Ex. 5 at 10–11, 14, 16, 20, Dkt. 34-5; Ex. 6, Dkt. 34-6; Ex. 7, Dkt. 34-7. It may be that other HBC entities created more voluminous documents relating to the restructuring, but at least with respect to documents covering the aspects of the restructuring that directly involved HBC US, the Court cannot comprehend a scenario in which HBC US has neither possession, nor custody, nor control of those documents, as those concepts are defined in this circuit. As an active participant in HBC's restructuring, HBC US cannot credibly claim to have neither access nor the practical ability to obtain restructuring-related documents, even if those documents do not actually reside on HBC US's servers or in physical form in HBC US's offices. Accordingly, the Court finds that CBRE has "ma[d]e an adequate showing to overcome" HBC US's denial that it has possession, custody, or control of any responsive documents. *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992).

The remaining issue for the Court, then, is whether HBC US has possession, custody, or control of documents belonging to or originating with its HBC affiliates or corporate parent. Respondents again fall back on Ms. Lee's declaration and reiterate that CBRE has the burden to demonstrate that HBC US has access and the practical ability to obtain its affiliates' documents. As noted, both common sense and the evidence severely undercut the credibility of Ms. Lee's carefully and oddly worded declaration, and Respondents' treatment of it as the holy gospel is unwarranted.

Ms. Lee attests that: she checked HBC US's records; she consulted with the officers of HBC US's ultimate parent; HBC US does not have "legal rights" to any responsive documents; and HBC US's parent will not authorize it to produce any responsive documents. Lee Decl. ¶ 10. As is clear, however, "control" in this context extends beyond whether HBC US has the "legal

9

right" to certain documents.  *See Ssangyong Corp. v. Vida Shoes Int'l, Inc.*, No. 03-CV-5014, 2004 WL 1125659, at *3 (S.D.N.Y. May 20, 2004) ("Under Rule 34 and Rule 45, the word control does not require that the party have legal ownership or actual physical possession of the documents at issue; rather documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." (cleaned up)).

That HBC L.P. refuses to provide HBC US with access to the requested documents provides some support for the position that HBC US does not have the practical ability to obtain the documents of its parent and affiliates.  *See Royal Park Invs. SA/NV v. Deutsche Bank Tr. Co.*, No. 14-CV-4394, 2016 WL 5408171, at *7 (S.D.N.Y. Sept. 27, 2016) ("[A] number of courts in this District and elsewhere apply the most 'practical' test of all [in assessing the practical ability to obtain documents]: whether the party has asked the non-party to turn over the documents at issue and, if so, whether the non-party is willing to do so.").  Ms. Lee's declaration, however, does little more to establish that HBC US has neither access nor the practical ability to obtain its affiliates' documents.  Notably absent from Ms. Lee's declaration, and placing it into sharp contrast with the record in the cases on which Respondents rely, are any attestations that: HBC US does not have access to its affiliates' or parent's documents in the ordinary course of business; HBC entities have separate computer systems that are inaccessible to other HBC entities; HBC entities do not share confidential information; or there are governance documents preventing affiliates from accessing each other's records.  Nor does her declaration describe HBC US's efforts to ensure that it had conducted an adequate search for responsive documents.[7]

---

[7]      In fact, Ms. Lee's declaration does not even make clear that HBC US does not have possession or custody of any responsive documents; instead, the inference is that, while it might have possession, it has not received permission from its parent to produce those documents.  That is plainly not the relevant determinant under the Federal Rules.  *See, e.g., Raimey v. Wright Nat. Flood Ins. Co.*, 76 F. Supp. 3d 452, 470 (E.D.N.Y. 2014) ("Control for the purposes of discovery is broadly defined, and includes situations where the party has the practical ability to

*See, e.g.*, *In re Stadtwerke*, 2019 WL 3004150, at *2; *In re Application of Passport Special Ops. Master Fund, LP*, No. 16-MC-33, 2016 WL 844833, at *5 (S.D.N.Y. Mar. 1, 2016); *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 141–42 (E.D.N.Y. 2009); *Zenith Electronics LLC v. Vizio, Inc.*, No. 08-MC-85, 2009 WL 3094889, at *2 (S.D.N.Y. Sept. 25, 2009).

Ultimately, however, while Ms. Lee's declaration and counsel's statements at oral argument do little to persuade the Court that HBC US does not, in fact, have access and the practical ability to obtain its affiliates' and corporate parent's records, CBRE has failed to satisfy its burden because its arguments are based almost entirely on conjecture. In support of its argument that HBC US has access and the practical ability to obtain its affiliates' and parent's documents, CBRE asserts that HBC US shares office space with certain of its affiliates — which means that they "probably" share computer systems and servers — and several HBC US employees serve as executives and officers of other HBC entities.[8] This does not, without more, support the conclusion that HBC US has a history of close coordination or cooperation with its affiliated entities such that the Court can conclude that it has the practical ability to acquire its affiliates' documents. *See Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12-CV-6608, 2014 WL 61472, at *3 (S.D.N.Y. Jan. 6, 2014) ("To determine a responding party's 'practical ability' to obtain documents from a non-party, courts in this district have looked to the existence of

_____

obtain the documents from another, irrespective of his legal entitlement to the documents." (cleaned up)). Thus, to the extent HBC US has any responsive documents in its possession or control, it must produce those documents to CBRE, consistent with this opinion, even if HBC L.P. does not give it permission to do so.

[8]   Notably, CBRE's arguments attempting to blur the lines between HBC US and its affiliates run directly counter to its position regarding the first *Intel* factor. There, CBRE presses the Court to respect corporate formalities by treating the HBC entities as separate legal entities such that seeking discovery from HBC US is not the same as seeking discovery from its foreign adversaries.

Similarly, the potential for issues concerning the overlap in Mr. Schwartz's role as an executive for HBC US and other HBC entities supports the Court's decision to hold in abeyance his deposition, at least until after CBRE has conducted its Rule 30(b)(6) deposition, a decision to which CBRE largely consented at oral argument. *See* Jan. 27, 2021 Oral Arg. Tr. at 35:18–23.

cooperative agreements or contracts between the responding party and non-party, the extent to which the non-party has a stake in the outcome of the litigation, and the non-party's past history of cooperating with document requests.").  CBRE has failed to point to any evidence tending to show that HBC entities do not respect corporate formalities or that there is a free flow of information and documents among HBC entities.  CBRE may not fill in its dearth of supporting evidence by arguing that HBC US was not forceful enough in its denial of CBRE's conclusory assertions that HBC US *must* have control of the responsive documents; that is patently insufficient for CBRE to carry its burden.  *See In re Application of Passport*, 2016 WL 844833, at *5 (holding that the petitioner, "as the party seeking discovery, bears the burden of demonstrating that [the respondent] has 'possession, custody, or control'" by making an *affirmative showing* of control).  This case is thus distinguishable from those in which a petitioner has put forth specific evidence to demonstrate that the subpoenaed party had either the legal right or practical ability to obtain responsive documents from a third party.  *See In re Stadtwerke*, 2019 WL 3004150, at *2 n.1 (distinguishing cases in which petitioners had made affirmative showing of control).

Because CBRE has not, to date, satisfied its burden to show that HBC US has possession, custody, or control of documents of affiliated HBC entities, CBRE's subpoena requesting document production — and, by extension, its testimonial subpoenas — is limited to documents over which the Court has determined that HBC US has control or that HBC US possesses, including any records of HBC US's finances and any documents relating to HBC's restructuring of which HBC US can be deemed to have control by virtue of its role in the broader restructuring.  Notwithstanding its attestations to the contrary, to the extent HBC US does have possession, custody, or control of its affiliates' documents, it is obligated to produce them to CBRE pursuant to this opinion.  Further, the Court's winnowing of the scope of the subpoenas is

without prejudice to CBRE seeking documents of HBC US's affiliates should the deposition of HBC US's corporate representative reveal additional facts that make clear that HBC US does have possession, custody, or control of such documents.[9]  That might occur, for example, if CBRE develops evidence that HBC US and related entities do not adhere to corporate formalities or that there is a free flow of documents among HBC affiliates in the regular course of business.

### III.   Statutory Requirements[10]

Having determined that CBRE has failed to carry its burden of demonstrating that HBC US has possession, custody, or control of its affiliates' documents, the Court limits its consideration of the statutory requirements — and *Intel* factors — to those documents of which HBC US plainly has possession or control.  With respect to that information, the Court finds that CBRE has satisfied all of the statutory requirements under section 1782.

#### A.  "The District in Which a Person Resides or Is Found"

Although Respondents concede that HBC US is found in the Southern District of New York, they assert that Mr. Schwartz neither resides in nor is found in this district, and thus the Court must quash Mr. Schwartz's testimonial subpoena.  Respondents first note that Mr. Schwartz is a resident of New Jersey, and he was served with the subpoena in New Jersey.  Resp. Mem. at 19.  Respondents further argue that, especially because Mr. Schwartz was working remotely from New Jersey after the COVID pandemic hit, CBRE's application fails to provide the necessary specificity concerning Mr. Schwartz's work for HBC US to allow the Court to conclude that his contacts with this district proximately resulted in the discovery material sought

---

[9]      Again, however, CBRE will still need to convince the Court that such a request does not flagrantly violate the policy animating the first *Intel* factor, which, as discussed below, will be a tough row to hoe.

[10]      Respondents do not contest CBRE's satisfaction of the third statutory factor, that CBRE is an interested person in the foreign litigations.

or that the evidence sought would not be available but for his forum contacts. *Id.* at 18–20

(citing *In re del Valle Ruiz*, 939 F.3d 520, 528, 530–31 (2d Cir. 2019)).

The Second Circuit recently held in *In re del Valle Ruiz* that "§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process," and that "where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery." *Id.* at 528, 530. "[W]here the respondent's contacts are broader and more significant, [however,] a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts." *Id.* at 530.

Notwithstanding the fact that the Second Circuit intended to "require a § 1782 applicant to provide additional specificity concerning the discovery it seeks," *id.* at 530 n.12, Respondents employ an interpretation of *del Valle Ruiz* that is too crabbed, *see* Resp. Reply at 10 n.6, Dkt. 36, particularly because the nexus between Mr. Schwartz's contacts with New York and the requested information is glaringly obvious. Petitioners seek information concerning a take-private transaction and accompanying restructuring that was announced in October 2019 and completed in or around March 2020. As Respondents conceded at oral argument, Mr. Schwartz was working at his HBC US office *in this district* during the period in which the restructuring occurred. *See* Jan. 27, 2021 Oral Arg. Tr. at 17:8–10. Thus, the Court has personal jurisdiction over Mr. Schwartz in this matter, and his contacts with New York are plainly the proximate and but-for cause of the information Petitioners seek: his knowledge of HBC's restructuring. *See Matter of de Leon*, No. 19-MC-197, 2020 WL 1047742, at *2 (D.D.C. Mar. 4, 2020) ("Because the information sought relates to CohnReznick's work for Northridge, an entity within this forum, the court finds that specific personal jurisdiction, and thus section 1782's 'resides or is found' requirement, are satisfied.").

**B. "For Use in a Proceeding Before a Foreign Tribunal"**

To be "for use" in a foreign proceeding, the discovery sought need not be necessary for the petitioner to succeed in the foreign proceeding; instead, "[t]he plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding—not necessarily something without which the applicant could not prevail." *Mees*, 793 F.3d at 298.  So long as an applicant can demonstrate that the sought-after materials "can be made use of in the foreign proceeding to increase her chances of success," the applicant will have been found to have satisfied the "for use" requirement.  *Id.* at 299.  For that reason, courts have described the "for use" element as requiring only a "*de minimis*" showing that the information sought would be relevant to the foreign proceeding.  *See In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 175 (S.D.N.Y. 2020); *see also Mees*, 793 F.3d at 299 n.10 ("[A] request that fails to show that the materials sought will be of *any use* in the foreign proceeding would not satisfy the 'for use' requirement." (emphasis added)).

There is little question that, as pled, the information CBRE seeks has no real connection to the Guarantee Litigation.  At its core, the Guarantee Litigation is a contract dispute, with the operative question being whether HBC ULC is obligated under the terms of the guarantees to pay CBRE approximately €69 million in connection with HBC NL's lease terminations.  *See generally* Dkt. 6-1 (certified translation of CBRE's complaint against HBC in the Guarantee Litigation).  HBC's overall restructuring, HBC US's role in that restructuring, and HBC US's specific financial situation all seemingly have no connection to the central issue in the Guarantee Litigation.  Similarly, CBRE's initial memorandum in support of its section 1782 application was largely ineffective to demonstrate how the requested material would be "for use" in the Guarantee Litigation.  *See* CBRE Mem. at 2 (stating that it had previously requested a similar,

and narrower, set of documents about the restructuring to ascertain "HBC's financial health and ability to satisfy creditor claims"); *id.* at 13 (stating, without more, that "the discovery sought is 'for use' in connection with the Guarantee Litigation").

Nevertheless, HBC's own litigation strategy undermines its argument that the material sought is not "for use" in connection with the Guarantee Litigation. As CBRE stresses, HBC put its financial status at issue in the Guarantee Litigation by invoking Dutch Civil Code Article 6:258, pursuant to which HBC seeks to convince the Dutch court to "modify the effects of [the] contract" based on "unforeseen circumstances," *i.e.*, the COVID pandemic. Heems Second Decl., Ex. B ¶¶ 5.80–5.85, Dkt. 32-2; Ex. C, Dkt. 32-3. That being the case, CBRE contends that it seeks information pertaining to HBC's restructuring and HBC's financial health to rebut HBC's invocation of the COVID pandemic as the reason for its financial straits and to demonstrate that HBC's restructuring left it in worse shape to withstand an economic downturn. In short, CBRE wants to show that HBC's financial predicament is of its own making.[11] *See* CBRE Opp. at 8–9.

---

[11]    Respondents posit that CBRE's reference to Art. 6:258 is a red herring and should not distract the Court from the fact that CBRE's requests have no purpose other than as an improper fishing expedition to obtain a better understanding of HBC's overall financial health. As Respondents see it, although CBRE characterizes HBC US's assets as among HBC's most valuable, HBC ULC, CBRE's adversary in the Guarantee Litigation, retained possession of HBC's Canadian and European assets, which are valued at around $3 to $4 billion. *See* Resp. Mem at 4, 21–23. Thus, Respondent's argue, HBC ULC plainly possesses sufficient assets, independent of HBC US's assets, to satisfy the Dutch guarantees, which are worth, at most, tens of millions of dollars. *Id.* Especially considering that CBRE also supports its position by reference to attachment proceedings it initiated against HBC ULC in the Netherlands in connection with the Guarantee Litigation, *see* CBRE Opp. at 9; Heems Second Decl. ¶¶ 4–5, it is clear that CBRE is using section 1782, in part, as a conduit for pre-judgment asset discovery, which is plainly impermissible, *see, e.g.*, *In re Ex Parte Shagang Shipping Co.*, No. 14-MC-53-P1, 2014 WL 1744264, at *2 (S.D.N.Y. Apr. 28, 2014).

Yet, as Respondents' cited cases demonstrate, even if CBRE's request is an improper attempt to gather information relevant not to the merits but to damages, that is an issue for the Court to consider in weighing whether to exercise its discretion to grant the application. *See id.* (stating that petitioner, despite seeking pre-judgment asset discovery, satisfied all of section 1782's statutory requirements, and considering the issue as relevant to the court's exercise of discretion). Moreover, even if CBRE's argument that HBC itself is to blame for its weakened financial position is unlikely to prevail in the Guarantee Litigation, the Court has little issue concluding that the information sought meets the minimal threshold question of whether the information is "for use" in the foreign litigation. The

Whatever the force of their arguments in connection with the Guarantee Litigation, Respondents' objections on the "for use" element fall away in light of the ongoing Restructuring Litigation.  Among the allegations in the Restructuring Litigation is that HBC's restructuring, including the transfer of HBC US assets from HBC ULC to HBC L.P., was a fraudulent conveyance.  *See* Notice of Civil Claim ¶ 51.  Directly at issue in the Canadian litigation, then, is the nature of the HBC restructuring, HBC US's role in that restructuring, and, by extension, information pertaining to HBC US's financial situation.[12]  That the Guarantee Litigation involves only €69 million of HBC's estimated more than $7 billion in assets does not negate the fact that the information pertaining to HBC US and its participation in the restructuring is directly relevant to CBRE's claims in the Restructuring Litigation.  *See* Jan. 27, 2021 Oral Arg. Tr. at 14:18–22.  Accordingly, the Court finds that CBRE has satisfied the statutory "for use" element of the section 1782 inquiry.

## IV.     *Intel* **Factors**[13]

Although the *Intel* factors provide a district court with a useful guide by which to assess whether to exercise its discretion to grant a section 1782 application, "[t]he *Intel* factors are not to be applied mechanically," and instead, "[a] district court should also take into account any other pertinent issues arising from the facts of the particular dispute."  *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).  Accordingly, no single *Intel* factor is alone

---

Court considers whether CBRE's request is an obvious, bad-faith attempt to obtain irrelevant information in its balancing of the *Intel* factors.

[12]     Interestingly enough, this element would have been more easily decided in CBRE's favor if the financial information of HBC US's affiliates and parent were still at issue.  Nevertheless, the Court has minimal difficulty envisioning scenarios in which HBC US's financial information will be relevant to CBRE's position in the Restructuring Litigation.

[13]     There is no dispute that the foreign tribunals are both receptive to U.S. court assistance, so that factor weighs in favor of CBRE.

dispositive, and the Court must balance the various factors and other pertinent considerations in determining whether to exercise its discretion.  *See In re WildBrain Fam. Int'l Ltd.*, No. 19-MC-527, 2020 WL 6135765, at *1 (S.D.N.Y. Oct. 19, 2020).   Nevertheless, the Court is endowed with "wide discretion" to authorize discovery to the extent the statutory requirements have been satisfied.  *In re Application of Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 619 (S.D.N.Y. 2018) (quoting *In re Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996)).   Here, having struck from the subpoenas requests for documents of HBC US's affiliates, the Court finds that the *Intel* factors and other relevant considerations weigh in favor of denying Respondent's motion to quash and upholding the Court's grant of CBRE's section 1782 application, as amended.

### A.  Whether the Person from Whom Discovery Is Sought Is a Participant in the Foreign Proceeding

Pursuant to the first *Intel* factor, the Court must be wary of the fact that "when the person from whom discovery is sought is a participant in the foreign proceeding, . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant . . . ."  *Intel*, 542 U.S. at 264.  In Respondents' view, although CBRE nominally seeks discovery from HBC US, its section 1782 application is actually an attempt to obtain discovery from its adversaries in the foreign proceedings, as evidenced by the fact that the subpoenas, as issued, explicitly request information concerning entities such as HBC ULC and HBC L.P., CBRE's adversaries in the two foreign litigations.  As the Second Circuit has made clear, where "for all intents and purposes petitioners are seeking discovery from . . . their opponent in the [foreign] litigation . . . , petitioner's need for § 1782 help" is not readily apparent.  *Schmitz*, 376 F.3d at 85; *see also Kiobel*, 895 F.3d at 245 ("[W]hen the real party from whom the documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition . . . .").  As the Court discussed during oral

argument, Second Circuit precedent makes clear that a petitioner may not use section 1782 to require an affiliate or related third party to obtain documents from its opponent in the foreign litigation.

"Parent companies who are 'participants' to foreign proceedings are considered separate legal entities from their subsidiaries and affiliates for the purpose of Section 1782 motions."  *In re Top Matrix Holdings, Ltd.*, No. 18-MC-465, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020).  Accordingly, there is no question that, considering only the entities themselves, HBC US is not a party to the foreign litigations.

Were the Court forced to include the financial information of HBC US's affiliated entities in its weighing of the first *Intel* factor, there would be little question that this factor would cut in Respondents' favor:  Seeking the financial statements of HBC ULC and HBC L.P. would plainly fall into the category of seeking a foreign adversary's information from the foreign adversary's affiliate.  Here, however, considering the narrowed subpoenas — which seek only HBC US's financial information and restructuring-related documents that HBC US would be expected to have by virtue of its participation in the restructuring — the Court cannot conclude that CBRE's request is, for all intents and purposes, an attempt to obtain discovery from HBC ULC and HBC L.P., its foreign court adversaries.  That the information sought from HBC US may also be in the possession of HBC ULC and HBC L.P. is of little to no consequence, *see In re Top Matrix*, 2020 WL 248716, at *5 ("As the court is not prohibited from compelling discovery of information in possession of both a parent company and its subsidiary, the first *Intel* factor is adequately met."), nor is it surprising that the information CBRE seeks implicates HBC ULC and HBC L.P., inasmuch as the whole purpose of the discovery request is to obtain

documents and information for use in foreign litigation against those two entities.[14]  Unlike the situation in certain of the cases relied on by Respondents, here, the information CBRE seeks from HBC US — as limited by the Court — is not information that an affiliate or subsidiary would have *solely* by virtue of its relationship to the real party to the foreign proceedings and is pertinent only to the party to the foreign proceeding.  Instead, the information sought is directly relevant to HBC US.  As such, the first *Intel* factor weighs in CBRE's favor.

## B.  Whether the Request Seeks to Circumvent Foreign Proof-Taking Restrictions

The third *Intel* factor asks whether the section 1782 application seeks to circumvent foreign proof-taking restrictions.  Respondents acknowledge that CBRE could access the requested information in the foreign litigations but nonetheless contend that both Canada and the Netherlands have certain pretrial discovery restrictions that would impede CBRE's collection of the evidence at this stage of the foreign proceedings.  This, Respondents argue, renders CBRE's section 1782 application a "tactical decision" to use HBC US as a conduit to obtain this information rather than to wait to get it at the proper time in the foreign proceedings.  *See* Resp. Mem. at 14–15.

Having conceded that neither Canadian nor Dutch courts prevent the acquisition or use of the material sought in the subpoenas, Respondents' position fails in the face of Second Circuit precedent which equates "foreign proof-gathering restrictions" with privileges that prohibit the acquisition or use of certain materials.  *See Mees*, 793 F.3d at 303 & n.20.  In other words, in this

---

[14]    Certain district courts in this circuit have analyzed the first *Intel* factor in terms of "whether the information sought in the application is within the jurisdiction of the foreign court."  *See, e.g.*, *In re Application of Elvis Presley Enters. LLC*, No. 15-MC-386, 2016 WL 843380, at *3 (S.D.N.Y. Mar. 1, 2016).  The Court believes that articulation of the first *Intel* factor is best understood as an alternative way of asking whether the discovery sought, even if nominally from a non-party to the foreign proceedings, is, in fact, discovery from the petitioner's foreign adversary.  Even if the Court were to assess this factor under that formulation, because HBC US is a U.S.-based company that is not before either the Canadian or Dutch courts, even if certain of the restructuring-related information would be within the jurisdiction of the foreign courts, much of the information sought is not clearly before those foreign courts.  *See* Heems Decl. ¶¶ 20–21.

circuit, "[o]nly where the materials being sought are privileged or otherwise prohibited from being discovered or used [in the foreign jurisdiction] is the third *Intel* factor implicated." *In re Tiberius Grp. AG*, No. 19-MC-467, 2020 WL 1140784, at *4 (S.D.N.Y. Mar. 6, 2020). Accordingly, because CBRE's subpoena requests do not seek information that is privileged under the Canadian and Dutch discovery rules or requirements, this factor does not support Respondents' motion to quash the subpoenas.[15]

Although they concede that the Second Circuit has construed narrowly the third *Intel* factor, *see* Jan. 27, 2021 Oral Arg. Tr. at 13:3–13, Respondents argue that, even if not in direct contravention of foreign proof gathering restrictions, permitting CBRE to manipulate the timing of the foreign proof gathering process would be an unwise exercise of this Court's discretion. *See* Resp. Mem. at 15. To the extent this argument is not foreclosed by the Second Circuit's interpretation of the third *Intel* factor, the Court's narrowing of the subpoenas to strike the requests for information from HBC US's affiliates that are parties in the foreign litigation alleviates any concern that, by granting CBRE's request, the Court is sanctioning a tactical decision to seek discovery at an inappropriate time and from an inappropriate subpoena recipient. Thus, the third *Intel* factor also favors CBRE.

### C. Whether the Request is Unduly Intrusive or Burdensome

In arguing that CBRE's request is unduly burdensome, Respondents argue that CBRE seeks an enormous amount of information on a number of different HBC entities, including those that are parties in the foreign litigations, despite the fact that HBC US is merely a holding company and does not have "control" over the requested documents. Resp. Mem. at 12–14. As

---

[15]    Additionally, CBRE was not required to attempt to obtain the materials through the foreign courts before filing a section 1782 discovery request. *See In re BNP Paribas Jersey Tr. Corp. Ltd.*, No. 18-MC-47, 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018) ("Courts may grant § 1782 applications even where the applicant did not first seek discovery in the foreign tribunal, or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding." (citations omitted)).

CBRE correctly notes, Respondents' arguments on this factor were never particularly persuasive;

a significant portion of the documents CBRE seeks is financial data, not records (like emails) as

to which the collection process can be particularly burdensome.  In any event, Respondents'

central argument on this factor has been negated by the Court's finding that, on this record, HBC

US does not have possession, custody, or control of its affiliates' documents.  Because the

documents sought are only those that plainly pertain to HBC US's own operations and financial

position, and transactions to which HBC US was a party, by Respondents' own admission, the

otherwise purportedly unbearable burden has now been alleviated.  *See* Jan. 27, 2021 Oral Arg.

Tr. at 12:3–8 ("[I]f the subpoena were limited to HBS U.S. Holdings, and it was clear that we're

not required to try to obtain documents from all of the other HBC entities and affiliates who have

possession, custody and control of those documents, . . . we agree that would substantially limit

the burden on HBC U.S. Holdings.").  Accordingly, this factor weighs against granting

Respondents' motion to quash.

## CONCLUSION

For the foregoing reasons, Respondents' motion to vacate the Court's September 11,

2020 order and to quash the subpoenas is DENIED, with the portion of Respondents' motion

pertaining to the deposition of Mr. Schwartz held in abeyance pending the deposition of HBC

US's corporate representative.  CBRE's subpoenas are limited to documents pertaining to HBC

US's financial information and restructuring-related documents that concern aspects of HBC's

restructuring in which HBC US was involved.  No later than two weeks after CBRE has deposed

HBC US's corporate representative, the parties must meet and confer to discuss whether CBRE

still seeks to depose Mr. Schwartz.  To the extent CBRE continues to seek Mr. Schwartz's

deposition, the parties must notify the Court not later than one week after the parties meet-and-

confer.

The Clerk of Court is respectfully requested to terminate the open motion at Dkt. 19.


**SO ORDERED.**

**Date:  July 9, 2021**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**